A. Franklin Mahoney, J.
In this CPLB article 78 proceeding the petitioner seeks an order annulling and vacating'a determination of the Commissioner of Education dated April 24, 1972 which refused to set aside action of the voters of Central School District No. 4 of the Towns of Murray, Clarendon, Albion, Barre, Orleans County and Clarkson, Monroe County, more commonly known as the Holley Central School District, at a special meeting held December 9,1971 approving the construction of a new junior-senior high school at a cost not to exceed $4,600,000 by a vote of 683 to 655.
A reading of the petition discloses the following allegations as assigned error warranting reversal of the Commissioner’s *215 decision: (a) no poll list was kept as required by section 2029 of the Education Law; (b) ineligible voters were permitted to vote without challenge (Education Law, § 2019); (c) the notice of the meeting was published three rather than four times as required; and (d) the notice of meeting stated that voting would be by ballot when, in fact, voting was by machine and the Board of Education had not adopted rules for. the use of machines as required by section 2035 of the Education Law.
At the special meeting of December 9 the clerk kept a poll list containing only the names of the qualified voters of the district. That this list was not in keeping with the requirements of section 2029 of the Education Law which requires such a list to contain “ the name and legal residence of every person ” is beyond challenge. The argument, however, that this statutory violation should void the election results must be rejected. It has been repeatedly held that the failure to keep a poll list will not, standing alone, invalidate an election. Such a list is intended primarily as an aid in the conduct of the election. Misconduct of a nature heinous enough to invalidate must be found in the election itself.
In this connection, the allegations of petitioner that ineligible voters, sufficient in number to alter the result, were permitted to cast ballots would, if proven, most certainly be the kind of electoral error that would mandate the reversal of any decision that ignored such conduct. In this case the petitioner alludes to the geographical proximity of the State University at Brock-port, New York, to the voting place and states, without substantiation, that 31 college students who ‘ ‘ may ’ ’ not have been bona fide residents of the district cast ballots and, further, cast them in a manner which, if rejected, would have altered the result. The court is at a loss as to how petitioner made this mathematical determination, since neither he nor any one else challenged a single one of the 1,338 individuals who offered their ballots at the special meeting of December 9 (Education Law, § ,2019). Next, his conclusory allegation that the 31 alleged nonresident students cast their ballots in a manner that altered the vote is without logical premise, given the over-all percentile division of the total votes cast. Even assuming, arguendo, that all 31 alleged nonresident students had been challenged pursuant to section 2019 of the Education Law, there would still be required of the protestor proof that the votes were cast in a manner that would have changed the result. In this case 29 of the challenged 31 voters would have had to vote negatively to alter the result. In Matter of Badillo v. Santangelo *216 (15 A D 2d 341), the margin of victory was 83 votes while 90 invalid votes were cast. The court refused to set aside the election since it appeared unlikely that the loser received 83 of these votes (see, also, Matter of Boyes v. Allen, 32 A D 2d 990; Matter of Acevedo v. Power, 18 N Y 2d 700). Finally, on this point, the petitioner’s papers are void of any proof that some of the alleged students, if challenged, might not have met the residency requirements (Gorenberg v. Onondaga County Bd. of Elections, 67 Misc 2d 766).
Petitioner’s argument with respect to the notice of meeting stating that the election would be by ballot when, in fact, it was conducted by machine, must also be rejected. The controlling language of subdivision 1 of section 2035 of the Education Law, dispositive of this point, is as follows: “ The use of such machine shall be deemed a compliance with any provision of law requiring the vote to be by ballot.” Also, the answer of the respondent school district has attached thereto a certified copy of the resolution of the Board of Education adopted June 18, 1969 determining that voting machines would be used at subsequent meetings of the district.
Lastly, the affidavits of the publishers of the two newspapers that carried the notice of meeting attest to the fact that the failure to print said notice four times, rather than three, and the printing of one such notice in the wrong newspaper, were solely the fault of the publishers. This fact, coupled with a mailing of a descriptive brochure of the proposed school to each post office box in the district, and with other articles in the news media, preponderantly proves a lack of fraud or willfulness on the part of the officials charged with the conduct of the election. Mere irregularities will not void an election (Education Law, § 2010).
The petition is dismissed.